MATTER OF SS. *FEDERAL COMMERCE*

In FINE Proceedings

NOR–83

*Decided by Board June 5, 1959*

Fine—Section 256 of 1952 act—No liability where payoff and discharge did not terminate employment with ship but merely transferred employee relationship to new owner.

No fine will lie under section 256 of the 1952 act against ship's former owner for having paid off and discharged an alien crewman concomitant with latter's re-signing ship's articles with new employer. "Pay off" within meaning of section 256 does not occur when there has been no break in the continuity of the crewman's service on the particular vessel.

IN RE: SS. *FEDERAL COMMERCE*, which arrived at the port of Norfolk, Virginia, from foreign on November 1, 1958. Alien crewman involved: J——A——.

BASIS FOR FINE: Act of 1952—Section 256 (8 U.S.C. 1286).

### BEFORE THE BOARD

**Discussion:** This appeal is directed to an administrative penalty of $500 ($1,000 mitigated to the extent of $500), which the district director has ordered imposed on the Raleigh Steamship Agency, Inc., inward agents for the vessel, for paying off and/or discharging the above-named alien crewman without prior permission from the Attorney General. The appeal will be sustained.

There appears to be no dispute as to the facts of this case. This vessel's arrival, *supra*, was for the sole purpose of transferring its ownership. Immigration inspection was accorded its crew immediately upon arrival. Except for one detainee, all the crewmembers, including the one here involved, were granted D–1 conditional landing permits.

On the morning of November 5, 1958, the inward agents informed the local office of the Service that formal transfer of ownership would be accomplished that afternoon; that the crewmembers were to be paid off and discharged before the sale; that approximately 20 crewmembers were leaving the vessel to be repatriated and/or reshipped; that the remaining crewmembers, who had expressed a desire to serve under the new owners and had signed a contract in

writing to that effect, would re-sign the vessel's articles after transfer of ownership; and requested the Service to issue D-2 permits for the crewmembers actually leaving the ship. That afternoon the British consul, accompanied by an immigration officer, boarded the vessel and all of the crewmembers who were to leave after pay off had their D-2 landing permits, issued after the information was furnished to the Service in the morning, checked and approved by the immigration officer. Thereafter, the British consul completed the pay off and discharge of the crewmembers; those who were being repatriated left the vessel and those remaining aboard re-signed the vessel's articles pursuant to the written agreement previously made with the new owners.

The crewman here involved deserted the vessel sometime after his pay off and discharge by the prior owners but subsequent to signing of articles with the new owners, presumably in the early morning of November 6, 1958. After the inward agents learned of his desertion, they furnished the Service with a letter which had been addressed to the crewman with a return Boston address on it. The crewman was picked up at that address by Service officials and apparently removed from the United States by and at the expense of the appropriate parties.

The foregoing establishes that the responsible parties acted most meticulously with respect to fulfilling their duties and obligations, both under the maritime laws and the immigration laws of this country. Such conduct on their part, no doubt, was the reason behind the district director's decision to mitigate the penalty to the maximum permissible under the statute. We, however, find that it definitely demonstrates that a violation of the law was not committed in this instance, for the reasons hereinafter set forth.

It has been judicially determined that:

The terms "pay off" and "discharge" are not synonymous, but I find as a fact that masters, agents and others engaged in maritime activities understand that the term "pay off" implies a *termination of service on the vessel* and not a mere payment of wages earned to date.

It should be so construed in section 256. (140 F. Supp. 876, 882; emphasis supplied.)[1]

In the light of this decision, the element essential to the establishment of a violation of this section of the law is a termination of the crewman's service aboard the vessel on which he arrived in the United States. But the foregoing evidence of this record clearly establishes that not only was there no break in the continuity of the

---

[1] Former 8 CFR 1.1(b)(14) provided that a violation of the statute occurred when a crewman's *service and presence* on board his vessel were *terminated* in any manner. This definition is no longer included in the regulations, it being considered no longer necessary in view of the court case cited—*United States* v. *Seaboard Surety Company*, 239 F.2d 667.

crewman's service aboard this vessel, but that the responsible parties so.conducted their business of transferring its ownership that there would be no hiatus in his employment aboard it. While there may have been a technical termination of his employment in the eyes of maritime law, due to the necessity of his signing off the articles under the former owners and re-signing the articles under the new owners, extreme caution was exercised in this respect, as evidenced by the crewman's signing of an agreement to re-sign under the new owners. At most, this technical termination was the conclusion of service for one owner and the beginning of service for a new owner. It certainly was not a termination of service insofar as the vessel was concerned. That is the crux of this case.

Finally, and while it is not necessarily pertinent to this matter, we will comment briefly on the question of the crewman's desertion. Clearly, under this section of the law, the termination contemplated is that resulting from the action of the responsible parties and not an end to employment clearly chargeable only to the action of the crewman. That is, the termination of a crewman's employment occurring under circumstances constituting him a deserter are clearly outside the contemplation of the statute. This Board has consistently held that the existence of facts establishing desertion relieve the parties named in the statute of liability to fine thereunder.

**Order:** It is ordered that the appeal be sustained and that no fine be imposed.

368